[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks, claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company;"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims including, without limitation, those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment);
R.I.G.L. 8-2-11.1 provides, in pertinent part that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties: (3) To require the production before him of books papers, vouchers, documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses to put witnesses on oath, to examine them and to call parties to the proceeding and examine them upon oath:"
In accordance with the above, a hearing was held on the above referenced claim on June 18, 1992 and on June 2 and June 23, 1994. At the conclusion of the hearing, the parties submitted Post-Hearing Memoranda.
Claimant, Edward Voccola, alleges ownership of a Heritage Savings account in the amount of $82,492.85 plus accrued interest. This Claimed Account is evidenced by a Heritage Passbook numbered 02-001988-0. This account was never entered into the records of Heritage and all entries are handwritten rather than computer generated with the exception of the opening balance which is typewritten. Claimant testified that he was unaware that the Claimed Account was any different from accounts maintained at Heritage in the usual course of business.
In addition to the Claimed Account, Mr. Voccola had various other accounts at Heritage which were reflected in the records of Heritage and are therefore not the subject of this claim. However the Court takes note of these other accounts evidence of which was introduced at the hearing, to show that Claimant was aware of the usual banking practices followed at Heritage.
Joseph Mollicone, Jr., the former president of Heritage, testified at the hearing Mollicone maintains that the Claimed Account was never opened at Heritage but was rather an account established by Claimant with Mollicone personally. This arrangement between the Claimant and Mollicone resulted in the deposit and withdrawals of monies which would not be recorded in the records of Heritage because these transactions were not in the ordinary course of business.
When a party makes a claim for funds allegedly on deposit at a financial institution, the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311, 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association, in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to, escrow funds, funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities, funds held to meet its acceptances or letters of credit, and withheld taxes; Provided, that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1), it must be shown that: (1) there is an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
Claimant denies that this passbook reflects anything other than an agreement between Heritage and a depositor as described above. Claimant argues that there was in fact no difference between Mollicone and Heritage and points to Mollicone's testimony that the handwriting in the passbook was done by a Heritage official. Furthermore, Claimant points to the fact that another Heritage official accepted the Claimed Account passbook as partial collateral for a loan.
Not surprisingly, Mollicone's credibility was repeatedly attacked at the hearing. This Court is well aware that Mollicone testified after being convicted of numerous felony charges in Superior Court. Likewise, the Court is aware of the lengthy sentence imposed on those charges. Mollicone freely admitted that he would very much like to see that sentence reduced and is even hopeful that this testimony would be a step in the direction of sentence reduction. That being the case, this Court sees no advantage to Mollicone to risk a perjury conviction which would most certainly end any hope for his release from incarceration. That is not to imply that everything Mollicone testified to is accepted without question by this Court, in fact, this Court finds some of Mollicone's interpretations of events as highly suspect. Nevertheless, Mollicone's testimony has been found to be most helpful by the Court.
In the instant case, this Court is not convinced that the Claimant was unaware that he had entered into a special relationship with Mollicone outside of the usual course of business. Claimant had, over the years, a number of usual course of business ("on line") accounts at Heritage. In fact, while holding the claimed account, Claimant maintained "on line" accounts at the institution. Since some accounts were computer generated and required deposit and withdrawal slips, while the Claimed Account was handwritten and required no such documentation to transact business, this Court finds it impossible to believe that Claimant was unaware of the distinction.
In order to illustrate this point, the Court points to transactions made on December 13, 1988 documentation of which was entered into evidence at the hearings. On that date, Claimant withdrew $6,205.39 from his on line account. This is reflected in the records of Heritage and was recorded in a computer generated notation in his passbook. Yet, on that same day, Claimant withdrew $3,420 from the Claimed Account which was noted by handwritten notations only. This Court can only conclude that Claimant knew or should have known that these two accounts were very different indeed. It should be pointed out that the Court does not believe that the Claimant is a unsophisticated investor. He had accumulated large sums of money over the years and knew how to protect his assets. Claimant understood the difference in the transactions that occurred on that date.
Claimant also points to December 13, 1988 in support of his claim. On that date, the Claimed Account was used to guarantee a loan in the amount of $136,666.43. Claimant argues that this is evidence of the existence of the Claimed Account. However, the Receiver has not taken the position that the money did not exist but rather that it was not a deposit placed with Heritage in the usual course of business.
Also, Claimant in his federal income tax returns treated his off line account different from his regular on line accounts. For the years 1989 and 1990, Claimant fails to list any interest for the Claimed Account. By failing to list interest income, Claimant was acknowledging the difference between the two types of accounts.
Why Claimant would enter into such an agreement with Mr. Mollicone is not a subject for this Court to speculate on. Claimant, for whatever reason, made a financial decision which upon reflection was a mistake. He now seeks to have the people of Rhode Island immunize him through DEPCO. It would be contrary to public policy to indemnify individuals who, by their own choice, transacted business with Heritage outside the usual course of the institution's business.
Therefore this Court holds that Claimant knew or should have known that his agreement was with Mollicone and not Heritage and as such was not in the usual course of business and is not entitled to a priority claim.